## Commonwealth *vs.* Matthew Mogelinski.

Franklin-Hampshire. September 3, 2013. - December 23, 2013.

Present: Ireland, C.J., Spina, Cordy, Botsford, Gants, Duffly, & Lenk, JJ.

*Juvenile Court,* Jurisdiction, Delinquent child. *Jurisdiction,* Juvenile Court, Juvenile delinquency proceeding. *Practice, Criminal,* Juvenile delinquency proceeding, Transfer hearing, Issuance of process, Complaint, Indictment. *Delinquent Child. Youthful Offender Act. Words,* "Apprehension."

Discussion of the jurisdiction of the Juvenile Court over juveniles proceeded against by delinquency complaints and youthful offender indictments. [630-632]

This court concluded that, in determining the jurisdiction of the Juvenile Court over an individual, the commencement of process (e.g., the issuance of a summons) marks the point of apprehension under G. L. c. 119, §§ 72, 72A, provided the individual is available to the court at that time. [632-636]

This court concluded that an individual may not be indicted as a youthful offender after the individual has turned eighteen for offenses allegedly committed between the ages of fourteen and seventeen; rather, to proceed against such an individual, the Commonwealth must file a delinquency complaint and then seek a transfer hearing pursuant to G. L. c. 119, § 72A; further, this court concluded that a youthful offender indictment may not proceed if a delinquency complaint on the same facts against the individual had been timely filed before the individual's eighteenth birthday, in that such an indictment is not, under G. L. c. 119, § 72A, another proceeding arising out of the case initiated by the delinquency complaint (i.e., the time of apprehension on a youthful offender indictment does not relate back to the time of apprehension on a delinquency complaint). [636-648] Gants, J., dissenting, with whom Spina and Cordy, JJ., joined.

Indictments found and returned in the Superior Court Department on December 5, 2011.

After transfer to the Franklin and Hampshire Counties Division of the Juvenile Court Department, questions of law were reported to the Appeals Court by *Judith J. Phillips*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Jeffrey S. Brown* for the defendant.

*Cynthia M. Pepyne*, Assistant District Attorney, for the Commonwealth.

*John Cushman & Patricia Garin*, for Committee for Public Counsel Services, amicus curiae, submitted a brief.

LENK, J. This case concerns the jurisdiction of the Juvenile Court.[1] The Commonwealth filed five delinquency complaints against the defendant when he was seventeen, charging him with rape of a child under sixteen, G. L. c. 265, § 23, and indecent assault and battery on a child under fourteen, G. L. c. 265, § 13B, based on an alleged seven-year period of sexual abuse of the victim. Although summonsed into court on those complaints while still seventeen years old, the defendant had turned eighteen by the time of his first scheduled court appearance and arraignment. More than six months later, the Commonwealth obtained youthful offender indictments against the defendant, based on the portion of the alleged abuse that took place when he was between fourteen and seventeen years old.

Pursuant to Mass. R. Crim. P. 34, as amended, 442 Mass. 1501 (2004), a judge of the Juvenile Court reported four questions concerning issues of the Juvenile Court's jurisdiction:

> "1. Whether the term 'apprehended' as appearing in G. L. c. 119, § 72[,] and G. L. c. 119, § 72A[,] refers to the time when a complaint is issued against an individual, or to when an individual is summoned for arraignment, or when an individual voluntarily appears in response to a summons or complaint and submits to the jurisdiction of the court at arraignment, or when an individual is arrested, or taken into custody pursuant to a complaint issued by the court?

> "2. Whether an individual may be indicted as a youthful offender after he has turned 18, for offenses he allegedly committed between the ages of 14 and 17?

> "3. If yes to question 2, would those youthful offender indictments be subject to a hearing pursuant to G. L. c. 119, § 72A[,] or would the individual be proceeded against as a youthful offender pursuant to G. L. c. 119, §§ 54 and 58?

---

[1] We acknowledge the amicus brief of the Committee for Public Counsel Services on behalf of the defendant.

"4. If no to question 2, may the court permit such an indictment to proceed if a delinquency complaint on the same facts against the [d]efendant was filed timely before his eighteenth birthday?"

We conclude that the commencement of process marks the point of apprehension, provided the individual is available to the court at that time. We answer the second reported question in the negative and, therefore, proceed directly to the fourth reported question. In answer to that question, we conclude that a youthful offender indictment may not issue against an individual after his or her eighteenth birthday, regardless of whether a delinquency complaint on the same facts has been filed before the individual's eighteenth birthday.

1. *Background and prior proceedings.* On May 10, 2011, the State police filed an application for a delinquency complaint in the Juvenile Court against the defendant, after initially being notified of allegations of sexual abuse on December 13, 2010. The application for the complaint alleged two counts of rape of a child under sixteen, G. L. c. 265, § 23, and three counts of indecent assault and battery on a child under fourteen, G. L. c. 265, § 13B. An assistant clerk-magistrate allowed the application on the day that it was filed, resulting in the issuance of five delinquency complaints against the defendant. The basis of the complaints was the defendant's alleged sexual abuse of the victim over a seven-year period, from August, 2001, to December, 2008, when the defendant was between eight and fifteen years old. On May 11, 2011, a summons issued, ordering the defendant and his mother to appear in the Juvenile Court on May 31. On May 31, the defendant duly appeared and was arraigned; he was released on personal recognizance, with conditions. When the complaint and summons issued, the defendant was less than two weeks shy of his eighteenth birthday. By the time of his arraignment on May 31, the defendant had turned eighteen years old.

Six months later, while the delinquency complaints were pending in the Juvenile Court, the Commonwealth pursued youthful offender indictments against the defendant pursuant to G. L. c. 119, § 54; the Commonwealth previously had assented

to the defendant's motion to confirm Juvenile Court jurisdiction and had agreed not to pursue a transfer hearing. On December 5, 2011, a grand jury returned youthful offender indictments charging two counts of rape of a child under sixteen and three counts of indecent assault and battery on a child under fourteen. The indictments allege that the offenses occurred between May 23, 2007, and December 31, 2008, when the defendant was between fourteen and fifteen years old. Due to alleged violations of the release conditions, the Commonwealth moved to revoke bail, and on December 7, 2011, a warrant issued for the defendant's arrest. The defendant was taken into custody on this warrant on December 13, when he appeared at a pretrial conference. Also on December 13, the defendant was arraigned on the youthful offender indictments, and the Commonwealth entered nolle prosequi on four of the five delinquency complaints. A nolle prosequi was entered on the remaining complaint on June 18, 2012, after the defendant had attained the age of nineteen.

On February 2, 2012, the defendant filed a motion to dismiss the indictments, arguing, inter alia, that the Juvenile Court lacked jurisdiction to proceed under G. L. c. 119, § 72, since the youthful offender indictments issued after his eighteenth birthday. That motion was denied; the defendant's subsequent motion to report questions of law was allowed. After a Juvenile Court judge reported four questions to the Appeals Court, we transferred the case to this court on our own motion.

2. *Statutory framework.* After this case was argued, the Governor signed St. 2013, c. 84, "An Act expanding juvenile jurisdiction," which amended various provisions of G. L. c. 119. The act confers jurisdiction on the Juvenile Court over cases where the alleged offense was committed up to the point of a defendant's eighteenth (rather than seventeenth) birthday. We analyze this case, however, under the statutory scheme as it existed at all relevant times prior to this amendment.

In general, the Juvenile Court has jurisdiction over children between the ages of seven and seventeen who are alleged to have committed an offense (other than murder) prior to their

seventeenth birthday.[2] G. L. c. 119, §§ 52, 74. The Juvenile Court also retains jurisdiction over children who turn eighteen while their cases are pending, in order to adjudicate "all remands and retrials following appeals from their cases, or during continuances or probation, or after their cases have been placed on file, or for any other proceeding arising out of their cases." G. L. c. 119, § 72 (*a*) (where proceeding commenced via delinquency complaint). G. L. c. 119, § 72 (*b*) (where proceeding commenced via youthful offender indictment). The Commonwealth may proceed against these children along one of two tracks, each with different procedural protections and sentencing consequences for the juvenile.

First, "if the juvenile is proceeded against by complaint, the juvenile is classified as a delinquent." *Commonwealth* v. *Dale D.*, 431 Mass. 757, 759 (2000). Individuals proceeded against as delinquents are afforded protections not available in the adult system, such as the presumptive privacy of court records, G. L. c. 119, § 60A, and pre- or postadjudicatory probation, G. L. c. 119, § 58. Perhaps most importantly, Juvenile Court judges have broad "discretion . . . to render individualized dispositions consistent with the best interests of the child," *Commonwealth* v. *Hanson H.*, 464 Mass. 807, 808 (2013), by either "plac[ing] the case on file or . . . plac[ing] the child in the care of a probation officer for such time and on such conditions as it deems appropriate or . . . commit[ting] him to the custody of the department of youth services." G. L. c. 119, § 58.

Alternatively, the Commonwealth may seek an indictment against a juvenile for specific types of violent offenses or where the individual previously has been adjudicated delinquent and was between the ages of fourteen and seventeen at the time of the offense;[3] "[i]f an indictment is successfully obtained, the

[2]The Juvenile Court has no jurisdiction over juveniles between the ages of fourteen and seventeen who have been charged with murder in the first or second degree; in such cases, the juvenile must be prosecuted as an adult in the Superior Court, in accordance with the usual course and manner of criminal proceedings. G. L. c. 119, § 74.

[3]Pursuant to a recent amendment, see discussion, *supra*, the Commonwealth may seek a youthful offender indictment at any point prior to an individual's nineteenth birthday, for offenses alleged to have been committed between the ages of fourteen and eighteen. St. 2013, c. 84, § 8.

juvenile is classified as a youthful offender." *Commonwealth* v. *Dale D., supra* at 759. See G. L. c. 119, § 54. The youthful offender designation, legislatively created in 1996 in "response to societal concerns about violent crimes committed by juveniles," *Commonwealth* v. *Clint C.*, 430 Mass. 219, 222-223 (1999), was intended "to reduce or eliminate certain protections previously available to all juvenile offenders." *Doe* v. *Attorney Gen. (No. 1)*, 425 Mass. 210, 212-213 (1997). Although youthful offenders are proceeded against in Juvenile Court, their treatment may, in other respects, resemble that of adult offenders: their court proceedings are not shielded from public inspection; they are eligible for enhanced penalties, including any adult sentence provided for by law; and they can be confined in an adult house of correction or State prison. G. L. c. 119, § 58. Thus, the terms "youthful offender" and "delinquent child" reflect and incorporate different legislative judgments about the accountability of children for certain offenses.

While proceedings under either a delinquency complaint or a youthful offender indictment presuppose that an individual is under the age of eighteen when the proceeding is commenced, the Commonwealth is not precluded from prosecuting individuals who are "apprehended" after their eighteenth birthdays for offenses committed prior to turning seventeen.[4] See G. L. c. 119, § 72A. In such cases, the Commonwealth first must file a delinquency complaint and obtain a transfer hearing in the Juvenile Court. *Id. Commonwealth* v. *Nanny*, 462 Mass. 798, 802 (2012). At the transfer hearing, a Juvenile Court judge considers whether there is probable cause to believe that the individual committed the charged offense and, if so, whether the individual should be discharged or whether the public interest requires that the case be transferred and the individual be tried as an adult. G. L. c. 119, § 72A.

3. *Discussion.* a. *First reported question.* The first reported question is:

"Whether the term 'apprehended' as appearing in G. L.

---

[4]Pursuant to a recent amendment, see discussion, *supra*, the Commonwealth may seek a transfer hearing if an individual is apprehended after the age of nineteen, for conduct allegedly committed prior to his or her eighteenth birthday. St. 2013, c. 84, § 23.

c. 119, § 72[,] and G. L. c. 119, § 72A[,] refers to the time when a complaint is issued against an individual, or to when an individual is summonsed for arraignment, or when an individual voluntarily appears in response to a summons or complaint and submits to the jurisdiction of the court at arraignment, or when an individual is arrested, or taken into custody pursuant to a complaint issued by the court?"

The word "apprehended" in this context is, as yet, undefined in our case law, but of central importance in determining the jurisdiction of the Juvenile Court. As discussed *supra*, an individual's age at apprehension dictates whether the Juvenile Court has jurisdiction to proceed: persons apprehended prior to their eighteenth birthdays will be proceeded against as children, and persons apprehended after their eighteenth birthdays will either be proceeded against as adults or discharged. G. L. c. 119, §§ 72, 72A.

Here, if apprehension is fixed at the time of the issuance of either the complaint or the summons, the defendant was apprehended on the complaints when he was seventeen, and should be prosecuted in the Juvenile Court. However, if we deem apprehension to have occurred no earlier than the time of arraignment or of having been taken into custody, the defendant was apprehended on the complaints at age eighteen, and the Commonwealth should proceed by means of a transfer hearing pursuant to G. L. c. 119, § 72A.

As with all matters of statutory interpretation, we look first to the plain meaning of the statutory language. See *International Fid. Ins. Co.* v. *Wilson*, 387 Mass. 841, 853 (1983), citing *Hoffman* v. *Howmedica, Inc.*, 373 Mass. 32, 37 (1977) ("the primary source of insight into the intent of the Legislature is the language of the statute"). Where the language is clear and unambiguous, it is to be given its "ordinary meaning." *Commonwealth* v. *Brown*, 431 Mass. 772, 775, (2000), citing *Victor V.* v. *Commonwealth*, 423 Mass. 793, 794 (1996). "Of course, this meaning must be reasonable and supported by the purpose and history of the statute." *Wright* v. *Collector & Treas. of Arlington*, 422 Mass. 455, 457-458 (1996), citing *Sterilite Corp.* v. *Continental Cas. Co.*, 397 Mass. 837, 839 (1986).

In criminal cases generally, the word "apprehend" ordinarily is used to indicate a physical arrest. See, e.g., *Commonwealth* v. *Forde,* 367 Mass. 798, 807 (1975) ("Factors which would have tended to support a finding of exigency include . . . a likelihood that the suspect would escape if not *apprehended*" [emphasis supplied]); *Commonwealth* v. *Grant,* 57 Mass. App. Ct. 334, 338 (2003) ("this was a deliberate emergency police effort to *apprehend* one or more fleeing suspects" [emphasis supplied]). Recognizing the salient differences between the adult and juvenile criminal justice systems, however, both the defendant and the Commonwealth urge that the point of apprehension in juvenile cases should be fixed not when an individual is physically taken into custody but, rather, at the time of commencement of process, provided that the juvenile is available to the court at that point. We agree.

We begin by noting that this definition of apprehension is especially appropriate in the juvenile justice context. Focusing on physically taking an individual into custody is inapt in the juvenile setting, given that the statute discourages the use of arrest warrants and instead directs courts to issue summonses in the vast majority of cases. See G. L. c. 119, § 54 (only summons may be used where juvenile is under age twelve; in all other cases, summons shall issue instead of warrant, unless court has reason to believe that defendant will not appear upon summons). Furthermore, the juvenile system, as a whole, is predicated on the theory that proceedings against juveniles are "non-criminal and treatment-oriented." R.L. Ireland, Juvenile Law § 1.3 (2d ed. 2006). Fixing the time of apprehension earlier rather than later increases the likelihood that individuals will be proceeded against prior to their eighteenth birthdays, thereby keeping them in this rehabilitative system.

Defining "apprehension" for the purposes of G. L. c. 119, §§ 72 and 72A, to mean the point of issuance of process, in this case a summons, also comports with the dictionary definition of the word, as well as with the statutory scheme as a whole. Black's Law Dictionary 117, 1480 (9th ed. 2009) defines "apprehension" as "[s]eizure in the name of the law; arrest," while "seizure" is defined as "[t]he act or an instance of taking possession of a person or property by legal right or pro-

cess . . . ." Rule 6 (a) of the Massachusetts Rules of Criminal Procedure, 378 Mass. 852 (1979), provides that process can issue either by a summons or a warrant; the filing of a complaint alone does not cause process to issue. As stated, a summons is the preferred method of issuing process in the juvenile system. See G. L. c. 119, § 54. Rule 6 (a) explains that a summons notifies an individual of the criminal proceedings against him or her and the date that he or she is to appear in court. Therefore, the issuance of a summons "apprehends" an individual by commencing process against him or her and serving as a notification of the pending charges.

Such a construction comports with the statutory scheme. Both G. L. c. 119, § 72 (*a*) and (*b*), provide that "the divisions of the juvenile court department shall continue to have jurisdiction over children who attain their eighteenth birthday pending final adjudication of their cases." Since the statute specifies that the Juvenile Court is to retain jurisdiction in such cases, apprehension cannot depend on being taken into custody. If it did, a case could be commenced against an individual in Juvenile Court while he or she was still seventeen and he or she could then be taken into custody after turning eighteen, at which point G. L. c. 119, § 72A, would divest the Juvenile Court of jurisdiction and mandate a transfer hearing. The better construction is to conclude that apprehension occurs upon commencement of process, provided the juvenile is available to the court. This view allows the Juvenile Court to retain jurisdiction in cases where a defendant turns eighteen after the proceeding has commenced, G. L. c. 119, § 72 (*a*) and (*b*), and, in so doing, prevents those statutory sections from being rendered superfluous.[5] See

---

[5]Our holding is limited to the word "apprehended" as it is used in defining the jurisdiction of the Juvenile Court. See G. L. c. 119, §§ 72, 72A. We do not purport to interpret the term as it appears in adult criminal statutes, which are subject to other considerations not before us.

We also do not reach the question of a defendant's rights in the case of bad faith or inexcusable delay in commencing process. See *Commonwealth* v. *Porges*, 460 Mass. 525, 532 n.4 (2011) ("Nor do we address whether a defendant may raise a due process claim if the Commonwealth in bad faith were to delay his apprehension until after his eighteenth birthday in order to proceed in adult court under G. L. c. 119, § 72A, . . . and a Juvenile Court judge were to decide that the interests of the public require that the person be tried for the offense").

*Commonwealth* v. *Nanny, supra* at 804, quoting *Wolfe* v. *Gormally,* 440 Mass. 699, 704 (2004) ("A basic tenet of statutory construction [is] that a statute [must] 'be construed "so that effect is given to all its provisions, so that no part will be inoperative or superfluous" ' "). See also *Commonwealth* v. *Sullivan,* 78 Mass. App. Ct. 631, 633 n.1 (2011) ("we may assume without deciding that commencement of process and availability to the court would also amount to 'apprehension' ").

By limiting this definition of "apprehension" to circumstances in which a juvenile is "available" to the court, we refer to those situations where there is no "reason to believe that he will not appear upon summons." G. L. c. 119, § 54. However, if there is cause to believe that the juvenile will not appear on the summons, "or if such a child has been summoned and did not appear," G. L. c. 119, § 54, provides that a warrant instead may issue for the juvenile's arrest. Where a warrant issues, apprehension occurs when a juvenile "is taken into custody and available to the Juvenile Court for disposition of the case against him." *Commonwealth* v. *A Juvenile,* 16 Mass. App. Ct. 251, 257 (1983). It is only when the juvenile is physically taken into custody that the authorities will have notified the juvenile of the proceedings against him or her, and also ensured that he or she will submit to the jurisdiction of the court.[6] See Mass. R. Crim. P. 6 (c) (3), 378 Mass. 852 (1979).

b. *Second reported question.* The second reported question is: "Whether an individual may be indicted as a youthful offender after he has turned 18, for offenses he allegedly committed between the ages of 14 and 17?"

When the Juvenile Court judge reported this question, *Commonwealth* v. *Nanny,* 462 Mass. 798 (2012), was pending before us. That case presented the same question whether the Commonwealth could proceed directly on a youthful offender indictment against an individual over the age of eighteen, for offenses

---

[6]Of course, it is also possible that a juvenile may be apprehended prior to the time of the issuance of a summons or a warrant, where, for example, the police catch him or her in the act of committing a crime. In such a case, taking the juvenile into custody constitutes apprehension; although there will be no specific charges pending at that time, the juvenile will be on notice that "the machinery of prosecution [has been] turned on." *Rothgery* v. *Gillespie County,* 554 U.S. 191, 208 (2008).

allegedly committed when he was between the ages of fourteen and seventeen,[7] or whether the individual was first entitled to a transfer hearing under G. L. c. 119, § 72A. We concluded that, in those circumstances, the Commonwealth could not proceed with a youthful offender indictment, and that the appropriate way to proceed against such individuals is by filing a delinquency complaint and then seeking a transfer hearing pursuant to G. L. c. 119, § 72A. See *Commonwealth* v. *Nanny, supra* at 806.

We determined that the plain language of G. L. c. 119, § 72A, requires that all defendants who meet the two statutory predicates (commission of offense prior to seventeenth birthday and apprehension after eighteenth birthday) be afforded transfer hearings. *Id.* at 802. We also emphasized that transfer hearings afford greater procedural protections than grand jury proceedings. *Id.* at 805.

Therefore, we answer the second reported question in the negative, in accordance with our decision in *Commonwealth* v. *Nanny, supra.* Because of our answer to the second reported question, we do not answer the third reported question.

c. *Fourth reported question.* The fourth reported question is: "If no to question 2, may the court permit such an indictment to proceed if a delinquency complaint on the same facts against the [d]efendant was filed timely before his eighteenth birthday?" In essence, we are asked to decide whether the existence of a timely filed delinquency complaint changes the outcome of *Commonwealth* v. *Nanny, supra.* We hold that it does not.

A different result could be justified only if a youthful offender indictment qualifies, as the Commonwealth urges, as "any other proceeding arising out of" a case initiated by delinquency complaint, such that the Juvenile Court may retain jurisdiction over it pursuant to G. L. c. 119, § 72 (*a*) ("The divisions of the juvenile court department shall continue to have jurisdiction over children who attain their eighteenth birthday pending final adjudication of their cases, including all remands

---

[7]General Laws c. 119, § 54, provides that a youthful offender indictment may issue only for offenses committed between the ages of fourteen and seventeen, although the applicability of G. L. c. 119, § 72A, is not limited to whether the offense was committed between those ages. See *Commonwealth* v. *Porges, supra* at 532.

and retrials following appeals from their cases, or during continuances or probation, or after their cases have been placed on file, or for any other proceeding arising out of their cases").

If a youthful offender indictment constitutes "any other proceeding arising out of" a case initiated by delinquency complaint, so long as a complaint was timely filed before an individual's eighteenth birthday, a youthful offender indictment, at least on the same facts, could later issue against that person at any point after his or her eighteenth birthday. The individual would then remain subject to the jurisdiction of the Juvenile Court and there would be no need for a transfer hearing pursuant to G. L. c. 119, § 72A. Relating apprehension on the youthful offender indictment back to the time of apprehension on the complaint is necessary, the Commonwealth maintains, to avoid needless pressure to complete the indictment process prior to an individual's eighteenth birthday.

On the other hand, if a youthful offender indictment is not "any other proceeding arising out of" a case initiated by a delinquency complaint, the Commonwealth may proceed in such circumstances only by the filing of a delinquency complaint, followed by a transfer hearing pursuant to G. L. c. 119, § 72A. The defendant argues that this result is compelled by the statutory scheme, which treats delinquency complaints and youthful offender indictments as distinct charging mechanisms, and that no provision extends Juvenile Court jurisdiction over youthful offender indictments brought after an individual has turned eighteen. Furthermore, the defendant maintains, the complaints and the indictments here were treated as separate criminal proceedings, based on different factual allegations.

In determining whether a youthful offender indictment qualifies as "any other proceeding arising out of" a case initiated by complaint, we consider the text of G. L. c. 119, § 72 (a), and the statutory scheme more generally, paying particular attention to the role of the G. L. c. 119, § 72A, transfer hearing.

To discern the meaning of "any other proceeding," we turn first to the text of G. L. c. 119, § 72 (a). That provision states that the Juvenile Court is to retain jurisdiction over individuals "who attain their eighteenth birthday pending final adjudication of their cases, including all remands and retrials following ap-

peals from their cases, or during continuances or probation, or after their cases have been placed on file, or for any other proceeding arising out of their cases." In interpreting the words "any other proceeding" in this sentence, we are guided by the ejusdem generis canon of statutory construction, which provides that "specific words . . . identify the class and [restrict] the meaning of general words to things within the class." *Commonwealth* v. *Zubiel*, 456 Mass. 27, 31 (2010), quoting 2A N.J. Singer & J.D. Shambie Singer, Sutherland Statutory Construction § 47.17, at 379 (7th ed. 2007). "The doctrine is most appropriate when a series of several terms is listed that concludes with the disputed language." *Banushi* v. *Dorfman*, 438 Mass. 242, 244 (2002), citing *Perlera* v. *Vining Disposal Serv., Inc.*, 47 Mass. App. Ct. 491, 496 n.8 (1999).

Here, every example of proceedings "arising out of their cases" in the statutory list is a procedural step in determining and administering the consequences stemming from an existing complaint. The general words "any other proceeding" are qualified by the more specific words preceding them; a new indictment that substantially increases a defendant's sentencing exposure is qualitatively different from a continuation of an existing complaint in the form of a remand or retrial, and is thus not contemplated by the phrase "any other proceeding."

Moreover, because "[d]ouble jeopardy prohibits prosecuting or punishing a defendant twice for the same offense," *Solomon* v. *Commonwealth*, 453 Mass. 1020, 1021 (2009), citing *Commonwealth* v. *Rabb*, 431 Mass. 123, 127 (2000), and given that jeopardy attaches at a juvenile proceeding when the trier of fact begins to hear evidence, *Breed* v. *Jones*, 421 U.S. 519, 531 (1975), a complaint and an indictment for the same offense cannot both proceed to final dispositions simultaneously. Therefore, in practice, a nolle prosequi is often entered on a complaint, or the complaint is dismissed by the court after an indictment issues. See, e.g., *Commonwealth* v. *Washington W.*, 462 Mass. 204, 206 (2012) (Commonwealth indicted juvenile as youthful offender for same two incidents of rape alleged in two delinquency complaints, and entered nolle prosequi on delinquency complaints). When this happens, the existing complaint is extinguished, and the indictment opens a new case. An indict-

ment thus often results in the demise of a complaint, and one cannot be said to arise out of the other and prolong the case in the same way that remands or retrials do.

The Legislature's failure to include youthful offender indictments in G. L. c. 119, § 72 (*a*), as a type of proceeding arising out of a case initiated by complaint, is all the more noteworthy given that it created a separate provision, G. L. c. 119, § 72 (*b*), to confer a discrete grant of jurisdiction upon the Juvenile Court "[i]f the commonwealth has proceeded by indictment" prior to a defendant's eighteenth birthday. This distinct subsection reinforces the inference that complaints and indictments are alternative methods of initiating proceedings, each resulting in distinct "cases," rather than one type of proceeding that derives from another.[8]

Finally, we note that G. L. c. 119, § 53, directing courts to construe liberally certain provisions relating to the juvenile justice system, does not supply a basis for reaching an alternative conclusion. That section states, "Sections fifty-two to sixty-three, inclusive, shall be liberally construed so that the care, custody and discipline of the children brought before the court shall approximate as nearly as possible that which they should receive from their parents, and that, as far as practicable, they shall be treated, not as criminals, but as children in need of aid, encouragement and guidance." G. L. c. 119, § 53. The dissent relies on this policy of liberal construction to arrive at a result other than that suggested by the plain text of the statute, *post* at 650-651, but this reliance is misplaced, for the provision we are construing is not G. L. c. 119, § 54, governing youthful offender indictments, but G. L. c. 119, § 72 (*a*), relating to continuing jurisdiction. In prior cases, we have noted the Legislature's explicit exclusion of certain provisions from the ambit of G. L. c. 119, § 53, and, accordingly, have adhered to the plain

---

[8]Although the Commonwealth argues that G. L. c. 119, § 72 (*b*), "specifically provides for occasions when an individual is indicted and the case remains open after the individual has attained the age of eighteen," that provision clearly presupposes that an indictment has already timely issued: "If the commonwealth *has proceeded by indictment*, the divisions of the juvenile court *shall continue to have jurisdiction* over such persons who attain their eighteenth birthday pending the final adjudication of their cases . . ." (emphasis supplied).

text of the statute. See *Commonwealth* v. *Porges*, 460 Mass. 525, 530 (2011) (interpreting G. L. c. 119, § 72A, and stating, "In enacting the new § 72A in 1996, the Legislature no longer required that the case 'shall be heard and determined in accordance with [G. L. c. 119, §§ 53-63],' where an offense is committed before a person's seventeenth birthday but the person is not apprehended until after his eighteenth birthday. Therefore, we need not look to G. L. c. 119, §§ 53-63, to determine whether any of these statutes provide for the transfer of a delinquency complaint to an adult criminal court").

Next, we consider the statutory scheme beyond the text of G. L. c. 119, § 72 (*a*). "[W]e look to the language of the entire statute, not just a single sentence, and attempt to interpret all of its terms 'harmoniously to effectuate the intent of the Legislature.' " *Commonwealth* v. *Hanson H.*, 464 Mass. 807, 810 (2013), quoting *Commonwealth* v. *Raposo*, 453 Mass. 739, 743 (2009). In so doing, we are mindful of the Legislature's "twin goals" with respect to the juvenile justice system, namely, "protecting the public from dangerous offenders, while emphasizing the rehabilitation of those children who pose a less serious risk to society." *Commonwealth* v. *Connor C.*, 432 Mass. 635, 646 (2000).

These twin goals are borne out by the existence of dual tracks within the juvenile justice system, with varying attendant rights and protections; complaints against individuals label them "delinquents" and place them on one track, while indictments label their subjects "youthful offenders" and place them on another. See *Commonwealth* v. *Dale D.*, 431 Mass. 757, 759 (2000). "A 'delinquent child' is subject to essentially rehabilitative penalties and remedies, while a 'youthful offender' is subject to penalties ranging from placement in a [Department of Youth Services] facility to adult sentences in the State prison." *Commonwealth* v. *Connor C.*, *supra* at 645.

The statute reflects these two legislative aims and, through its use of disjunctive language in many places, evinces an intent that a case proceed along one of these tracks, rather than straddle the line between the two. See G. L. c. 119, § 54 ("The commonwealth may proceed by complaint . . . *or* by indictment. . . . The court shall proceed on the complaint *or* the

indictment, as the case may be, in accordance with sections fifty-five to seventy-two, inclusive" [emphases supplied]); G. L. c. 119, § 55B (discussing pretrial motions in "a delinquency case *or* case in which the commonwealth has proceeded by indictment" [emphasis supplied]); G. L. c. 119, § 72 (*a*) (continued jurisdiction for cases timely initiated by complaint); G. L. c. 119, § 72 (*b*) (continued jurisdiction for cases timely initiated by indictment). Nowhere does the statute suggest that a complaint is merely a placeholder or a stand-in for an indictment to follow at a later date; rather, it gives the Commonwealth discretion to pursue either a complaint or an indictment, with the attendant consequences.

To be sure, the Commonwealth's use of one charging mechanism does not altogether preclude it from employing another, subject to the foregoing considerations. See *Commonwealth* v. *Dale D.*, *supra* at 759-760 (rejecting argument that "once the Commonwealth chooses to attempt to proceed by indictment, its option to proceed by complaint is foreclosed," where Commonwealth attempted to proceed by delinquency complaint after grand jury returned "no bill" on proposed youthful offender indictments). The Commonwealth is also not prohibited from bringing and maintaining a delinquency complaint while simultaneously seeking to obtain a timely youthful offender indictment from a grand jury. And the indictment sought may be based on the same set of facts as the complaint, or a subset of those facts,[9] provided that they do not both pass the point of jeopardy-attachment, resulting in the individual twice being prosecuted for the same offense. See *Stokes* v. *Commonwealth*, 368 Mass. 754, 762 (1975) (juvenile delinquency hearing qualifies as adjudicatory proceeding; where trier of fact has begun to hear evidence on merits, juvenile may not be tried for

---

[9]Notwithstanding the defendant's assertion that the indictments were based on different factual allegations, the Commonwealth attempted to indict on a subset of the same facts in this case, since the indictments encompassed a different time period than did the complaints. However, the complained-of conduct took place over a span of over seven years, dating back to when the defendant was eight years old. The youthful offender indictments merely narrowed that time period to a three-year window, corresponding to when the defendant was between the ages of fourteen and seventeen, since the conduct of a child under the age of fourteen may not form the basis of a youthful offender indictment. See G. L. c. 119, § 54.

second time as adult). Cf. *Commonwealth* v. *Washington W.,* *supra* at 206.

In any event, if the Commonwealth obtains a youthful offender indictment while a delinquency complaint is pending, process must issue once again to inform a defendant of the new criminal proceedings, regardless of whether the indictment concerns the same or similar factual allegations as the complaint. See Mass. R. Crim. P. 6 (a). As stated in our discussion of the first reported question, this commencement of process constitutes apprehension; both the Massachusetts Rules of Criminal Procedure and considerations of due process dictate that a defendant be notified of new proceedings pending against him or her.[10] Thus, the commencement of process after an indictment marks a new point of apprehension, distinct from any apprehension on delinquency complaints. The statute clearly prescribes that a specific procedure, the transfer hearing pursuant to G. L. c. 119, § 72A, take place when a defendant who is over the age of eighteen is apprehended, and makes no provision that the time of apprehension on an indictment relates back to the time of apprehension on a complaint. See *Johnson* v. *Commonwealth,* 409 Mass. 712, 717 (1991) ("Nor may we infer an intent by the Legislature to permit an extension of jurisdiction [in G. L. c. 119, § 72] by resort to the concept of tolling").

Our prior cases suggesting that a juvenile can be adjudicated a delinquent where the Commonwealth has proceeded by a youthful offender indictment but has failed to prove the additional elements required by G. L. c. 119, § 54, are not to the contrary. In *Commonwealth* v. *Quincy Q.,* 434 Mass. 859, 864-867 (2001), for example, we characterized youthful offender indictments as "authoriz[ing] judges to increase the punishment for juveniles convicted of certain offenses beyond the statutory maximum otherwise permitted," such that all facts supporting this enhanced penalty had to be proved to a jury beyond a reasonable doubt pursuant to *Apprendi* v. *New Jersey,* 530 U.S. 466 (2000). We held that where "the jury find that the defend-

---

[10]Here, the record reflects that the defendant was arraigned on December 13, 2011, on the youthful offender indictments issued on December 5, 2011, while he was in court in connection with the complaints. The docket is silent as to the issuance of a summons in conjunction with the indictments.

ant is guilty of the underlying offense but that the requirements of G. L. c. 119, § 54, have not been satisfied," the underlying offense will be treated as a delinquency complaint and the defendant instead may be adjudicated a delinquent. See *Commonwealth* v. *Quincy Q., supra* at 866-867 & n.8. See also *Commonwealth* v. *Lamont L.*, 438 Mass. 842, 843 (2003) ("when the Commonwealth indicts a juvenile as a youthful offender and improperly joins a companion indictment on a misdemeanor charge against the same juvenile, and, after trial, the juvenile is adjudicated a youthful offender on the misdemeanor charge, the proper remedy is . . . to order the entry of a delinquency finding on that misdemeanor offense").

According to the dissent, these cases demonstrate that adjudication on a delinquency complaint functions as a lesser included offense of conviction on a youthful offender indictment. *Post* at 653. To the extent that this is a useful analogy, it is only to show that, as an evidentiary matter, the delinquency complaint is coextensive with the "underlying offense" of a youthful offender indictment. That the Commonwealth can obtain an adjudication of delinquency if it has not succeeded in proving all the elements required for a youthful offender conviction does not also entail that a youthful offender conviction can "arise out of" a delinquency complaint. In other words, a youthful offender indictment can be ratcheted down at trial to a delinquency complaint, but a delinquency complaint cannot be ratcheted up to a youthful offender indictment. In any case, in both *Commonwealth* v. *Quincy Q., supra,* and *Commonwealth* v. *Lamont L., supra,* the Commonwealth proceeded directly on a youthful offender indictment without ever having filed a delinquency complaint; at no point was there an extant "case" comprising both a youthful offender indictment and a delinquency complaint. Thus, while the parallel to lesser included offenses drawn from these cases is useful for analyzing what the Commonwealth must prove at trial, it has little bearing on whether different charging decisions initiate different cases.

Finally, we turn to the import of the transfer hearing under G. L. c. 119, § 72A, which becomes relevant where a defendant is apprehended after his or her eighteenth birthday. In such cases, the statute mandates that a transfer hearing take place in

the Juvenile Court, at which time a judge determines whether there is probable cause to believe that the individual committed the charged offense and whether the public interest requires that he or she be tried as an adult, or that charges be dismissed altogether. G. L. c. 119, § 72A. As we stated in *Commonwealth* v. *Nanny*, 462 Mass. 798, 805 (2012), "A probable cause determination [in a transfer hearing] differs from that made in grand jury proceedings in many respects including that a judge makes the determination, not a grand jury, and a defendant may present a defense and cross-examine witnesses affording significant due process protections not available before a grand jury." The greater protections of a transfer hearing afforded one over the age of eighteen are appropriate when the consequences for past conduct may entail prosecution as an adult, a safeguard that is not necessary when an individual is still within the jurisdiction of the Juvenile Court.

The legislative intent that we discerned in *Commonwealth* v. *Nanny*, *supra*, to ensure that an individual over the age of eighteen cannot be proceeded against on a youthful offender indictment after his or her eighteenth birthday, omitting, as it does, the requirement of a transfer hearing, also counsels in favor of a similar result in cases where the Commonwealth already has filed a complaint. That a complaint has been filed timely provides no assurance whatsoever of the ensuing timeframe in which an indictment will issue. Were we to accept the Commonwealth's construction of the statutory scheme, an individual could be proceeded against as a youthful offender at any point after he or she turned eighteen, so long as he or she had been apprehended on a delinquency complaint prior to that date, obviating the need for the more protective transfer hearing altogether. We reiterate what we said in *Commonwealth* v. *Nanny*, *supra* at 804: "Because such an interpretation . . . would render the language of [G. L. c. 119, § 72A,] superfluous, we reject the Commonwealth's argument."

Ultimately, the Juvenile Court is a court of limited jurisdiction, which "has no . . . authority in the absence of a specific statutory authorization." *Commonwealth* v. *A Juvenile*, 406 Mass. 31, 34 (1989). When the Legislature has intended to broaden the scope of this jurisdiction, it has done so expressly, as with the

most recent amendment that increased the jurisdictional age limit from seventeen to eighteen. See St. 2013, c. 84. We presume that the Legislature enacts legislation with "an aware[ness] of the prior state of the law as explicated by the decisions of this court," *Commonwealth* v. *Callahan*, 440 Mass. 436, 441 (2003), quoting *L.W.K.* v. *E.R.C.*, 432 Mass. 438, 455 (2000) (Cowin, J., dissenting). If the Legislature had disagreed with the result in *Commonwealth* v. *Nanny*, *supra*, and wished to make it easier for youthful offender indictments to issue after an individual otherwise ages out of the juvenile justice system, it would have addressed the matter when it increased by one year the Juvenile Court's jurisdictional age limit. Indeed, raising that age limit was the method it chose for bringing more people under the aegis of the Juvenile Court, rather than blurring the lines between delinquency complaints and youthful offender indictments.

Therefore, for the reasons discussed, we answer the reported question in the negative and, in so doing, hold that the time of apprehension on a youthful offender indictment does not relate back to the time of apprehension on a delinquency complaint. This answer has a special impact on that narrow set of cases where the Commonwealth wishes to proceed against an individual who is just shy of the Juvenile Court's jurisdictional age limit. We recognize that, among the consequences that may ensue for this group, the Commonwealth may forgo the more time-consuming process of obtaining a youthful offender indictment, and the attendant possibility of harsher penalties, in exchange for the certainty of swift prosecution on a delinquency complaint. Alternatively, where it is not feasible to obtain a timely youthful offender indictment before a defendant's eighteenth birthday, the statutory scheme permits the Commonwealth instead to file a delinquency complaint after the eighteenth birthday and to seek a transfer to Superior Court, where he or she will be tried as an adult.[11]

To be sure, such brief (and presumably infrequent) delays in

---

[11]Where the Commonwealth does proceed via this latter route, it bears the burden of demonstrating the absence of bad faith or inexcusable delay in failing to obtain timely a youthful offender indictment. See note 5, *supra*. In such circumstances, it would be incumbent upon the Commonwealth to show the unfeasibility of timely seeking and obtaining such an indictment.

prosecution will, for some defendants, occasion a "crossing of the Rubicon" into adult court. There is thus an element of arbitrariness, as the dissent notes, see *post* at 649-650, in whether an individual will be tried as a juvenile or as an adult, depending on factors such as when a complainant comes forward and the length of time the grand jury is likely to take to return an indictment in a given case; a 17.5 year old may face a significantly different proceeding, with differing goals and outcomes, than a 17.9 year old might later confront in an adult court. This result, however, is ordained by the statutory framework that both provides for limited Juvenile Court jurisdiction over a class of defendants of a certain age and intends that a defendant will not "fall 'between the cracks' and be free from prosecution where the [defendant] is apprehended after his eighteenth birthday." *Commonwealth* v. *Porges*, 460 Mass. 525, 531 (2011). At a certain point, an individual will reach a level of maturity at which he or she is deemed competent to answer as an adult for his or her past actions. The Legislature has determined the age marking that point of maturity, and once an individual has reached it, a youthful offender indictment may no longer issue.

Were this cutoff point not enforced, moreover, the Commonwealth would have an indeterminate period of time in which to change its charging decision after a juvenile turned eighteen, thereby introducing unnecessary uncertainty and unwelcome delay into the juvenile system, and thwarting the prompt and effective administration of juvenile justice. See, e.g., J.A. Butts, G.R. Cusick, & B. Adams, Delays in Youth Justice 4 (2009) ("Especially given the developmental immaturity of adolescents, swift intervention is likely to be more effective with youthful offenders, both in achieving the specific deterrent effects of punishment and in realizing the potential benefits of treatment and other services. Improving the timeliness of the justice process is far more than a technical matter for managers and judges. It is a critical part of policy and practice in ensuring that the youth justice system fulfills its basic mission"); Butts & Sanborn, Is Juvenile Justice Just Too Slow? 83 Judicature 16, 18 (1999) ("Delays in juvenile justice may be uniquely harmful. Adolescents are socially, emotionally, and cognitively different from adults. Particularly during stressful circumstances, adolescents exhibit a

sense of 'futurelessness' in evaluating the possible risks associated with personal behavior and choices. Negative consequences that might be enforced sometime in the future do not exert much influence over a juvenile's behavior. The very nature of adolescent psychology reduces the perceived immediacy of delayed sanctions — even delays considered routine in adult court. A slow court process also reduces the ability of the juvenile justice system to intervene in the budding careers of young, repeat offenders"). By contrast, respecting an individual's eighteenth birthday as a deadline by which to bring a youthful offender indictment ensures that juveniles will either be proceeded against in Juvenile Court in a timely manner or, upon aging out of the Juvenile Court system, will be afforded a transfer hearing pursuant to G. L. c. 119, § 72A.

4. *Conclusion.* For the reasons stated, we answer the first reported question, "The term 'apprehension' in G. L. c. 119, § 72A, refers to the time of commencement of process (i.e., when a summons issues), provided the juvenile is 'available' to the court at that point." We answer the second reported question, "No," and the fourth reported question, "No." Because of our answer to the second reported question, we do not answer the third reported question. The matter is remanded to the Juvenile Court for further proceedings consistent with this opinion.

*So ordered.*

GANTS, J. (concurring in part and dissenting in part, with whom Spina and Cordy, JJ., join). I concur with the court that a person is "apprehended" under G. L. c. 119, §§ 72 and 72A, once a summons issues on a complaint or on an indictment, or once a person is arrested, and therefore agree with the court's answer to the first reported question. I also agree with the court that "this definition of apprehension is especially appropriate in the juvenile justice context," because "[f]ixing the time of apprehension earlier rather than later increases the likelihood that individuals will be proceeded against prior to their eighteenth birthdays, thereby keeping them in this rehabilitative system." *Ante* at 634. However, I disagree with the court's answers to

reported questions two and four because the court's interpretation of the relevant statutes governing the adjudication of juveniles needlessly will remove from "this rehabilitative system" persons who committed offenses between their fourteenth and seventeenth birthday, will yield results that serve neither the public nor the alleged offender, and could not reasonably have been intended by the Legislature. Therefore, as to those answers, I respectfully dissent.[1]

The consequence of the court's statutory interpretation is most easily understood through the use of a hypothetical. Imagine that an alleged victim of an indecent assault and battery and a forcible rape that occurred when the alleged offender was sixteen years of age reports the offenses to the police when the alleged offender is one week short of his eighteenth birthday. Under the court's interpretation, if the police cause a juvenile complaint and summons to issue before the alleged offender turns eighteen, the offender is "apprehended" between his seventeenth and eighteenth birthday, and under G. L. c. 119, § 72 (*a*), "the court shall deal with such child in the same manner as if he has not attained his seventeenth birthday, and all provisions and rights applicable to a child under the age of seventeen shall apply to such a child." If the Commonwealth somehow is able within that week to obtain a youthful offender indictment (and a new summons) for the alleged rape before the offender attains the age of eighteen, the Commonwealth may proceed on that youthful offender indictment and on the indecent assault and battery delinquency complaint in Juvenile Court, see § 72 (*a*), (*b*), and the charges may be joined for trial. See *Commonwealth* v. *Quincy Q.*, 434 Mass. 859, 863 n.4, 866 (2001) (joinder "especially appropriate" in case involving rape and indecent assault and battery charges); R.L. Ireland, Juvenile Law § 2.6, at 430-431 (2d ed. 2006) (Ireland).

However, according to the court's opinion, if the Commonwealth cannot move that quickly to indict the alleged of-

[1]On September 18, 2013, the Governor signed legislation that amended various provisions of G. L. c. 119 to confer jurisdiction on the Juvenile Court over alleged offenses that occurred before an alleged offender's eighteenth (rather than seventeenth) birthday. St. 2013, c. 84. Because the alleged offenses here occurred before the statute expanding juvenile jurisdiction became effective, the new statute does not affect this case.

fender before he attains the age of eighteen, either because further investigation is required or the grand jury is not scheduled to meet, the Commonwealth loses the ability to indict the juvenile on the rape charge and must proceed in Juvenile Court on the delinquency complaints. By losing the ability to indict, the Commonwealth also loses the ability to seek the greater penalties that can be obtained only with an indictment. See *Commonwealth* v. *Dale D.*, 431 Mass. 757, 759 (2000) ("juvenile indicted as a youthful offender faces substantially greater penalties than a juvenile proceeded against by complaint as a delinquent"). The only way for the Commonwealth to proceed by indictment is to delay the issuance of the summons on the rape complaint until the alleged offender attains the age of eighteen years, or to dismiss the earlier delinquency complaint on that charge and file a new criminal complaint after the alleged offender becomes eighteen years of age.[2] By delaying apprehension until the offender becomes eighteen years of age, the rape charge would be governed by § 72A, where a Juvenile Court judge would either order the person to be discharged, "if satisfied that such discharge is consistent with the protection of the public," or allow the rape charge to be adjudicated in a proceeding in criminal court. If the judge were to allow the rape charge to proceed, it would be tried in a criminal court, and the indecent assault and battery delinquency complaint would be tried in Juvenile Court, which would mean that, as to the rape charge, the defendant would lose the rehabilitative emphasis of the juvenile justice system, and the victim would need to testify at two trials. See G. L. c. 119, §§ 53, 54 (section 54, which governs juvenile proceedings involving youthful offender indictments, is among statutes that, under § 53, "shall be liberally construed so that the care, custody and discipline of the children brought before the court shall approximate as nearly as possible

---

[2]Such a course of action might be subject to a motion to dismiss on due process grounds were the Commonwealth to act in bad faith. See *Commonwealth* v. *Porges*, 460 Mass. 525, 532 n.4 (2011) ("Nor do we address whether a defendant may raise a due process claim if the Commonwealth in bad faith were to delay his apprehension until after his eighteenth birthday in order to proceed in an adult court under G. L. c. 119, § 72A, rather than in the Juvenile Court under G. L. c. 119, § 72, and a Juvenile Court judge were to decide that the interests of the public require that the person be tried for the offense").

that which they should receive from their parents, and that, as far as practicable, they shall be treated, not as criminals, but as children in need of aid, encouragement and guidance"). See also *Commonwealth* v. *Anderson*, 461 Mass. 616, 630 (2012) (youthful offender indictment governed by "liberal construction" pursuant to § 53).

This is plainly not a sensible result, but the court appears to think that it is required by the language of the governing statutes. In fact, the court's interpretation is at odds with a reasonable interpretation of the language of these statutes and with the statutory purpose intended by the Legislature. As earlier noted, under § 72 (*a*), "[i]f a child commits an offense prior to his seventeenth birthday, and is not apprehended until between his seventeenth and eighteenth birthday, the court shall deal with such child in the same manner as if he has not attained his seventeenth birthday, and all provisions and rights applicable to a child under seventeen shall apply to such child." Under this statute, an alleged offense committed by a juvenile before his seventeenth birthday "shall" be adjudicated in Juvenile Court where the juvenile is apprehended before he turns eighteen. Section 72 (*a*) also makes clear that "[t]he divisions of the juvenile court department shall continue to have jurisdiction over children who attain their eighteenth birthday pending final adjudication of their cases." The Legislature that enacted § 72 (*a*) was so emphatic that, where a juvenile is apprehended before the age of eighteen regarding offenses that allegedly occurred before he was seventeen, these cases should be adjudicated from start to finish in Juvenile Court that it expressly provided that the Juvenile Court Department continued to have jurisdiction over these children in "all remands and retrials following appeals from their cases, or during continuances or probation, or after their cases have been placed on file, *or for any other proceeding arising out of their cases*" (emphasis added). Consequently, where a juvenile conviction is vacated and the case is retried, the retrial is in Juvenile Court, regardless of how much time has passed. Where a juvenile violates a condition of probation, the probation violation hearing is heard in Juvenile Court, regardless of how much time has passed. Where a case is placed on file, and the juvenile commits a violation

that causes the Commonwealth to pull the case from the file and try it, the trial is heard in Juvenile Court, regardless of how much time has passed. And where there is "any other proceeding arising out of their cases," that proceeding is heard in Juvenile Court, regardless of how much time has passed.

If the court were to conclude, as I do, that a youthful offender indictment is a "proceeding arising out of" a case commenced by a delinquency complaint, the legislative purpose would be honored, because a case that began in Juvenile Court would then remain in Juvenile Court after a grand jury returned a youthful offender indictment, even if the indictment were returned after the offender attained the age of eighteen years. The court, however, concludes that a youthful offender indictment initiates a separate proceeding that does not arise out of a case initiated by a delinquency complaint, even where the youthful offender indictment alleges the same criminal violation and is based on the same criminal act. See *ante* at 639-640. Our case law is to the contrary.

To obtain a youthful offender indictment regarding a crime that is already charged in a delinquency complaint, the Commonwealth must not only present the grand jury with evidence sufficient to establish probable cause that the offender committed the crime alleged in the delinquency complaint but must also offer evidence sufficient to establish probable cause regarding the three additional elements required to charge the juvenile as a youthful offender: (1) the juvenile was between fourteen and seventeen years of age at the time of the offense; (2) the offense, if committed by an adult, is punishable by imprisonment in a State prison; and (3) either the juvenile has previously been committed to the Department of Youth Services, *or* "the offense involves the infliction or threat of serious bodily harm," *or* the person committed a violation of G. L. c. 269, § 10 (*a*), (*c*), or (*d*), or § 10E. G. L. c. 119, § 54. See *Commonwealth* v. *Quincy Q.,* 434 Mass. 859, 865 (2001) ("if the Commonwealth determines to proceed against a juvenile by indictment, it must present at the grand jury stage sufficient evidence of the underlying offense to warrant a finding of probable cause that the underlying crime has been committed . . . as well as sufficient evidence that the requirements set forth in G. L. c. 119, § 54,

have been met" [citation omitted]). Where at trial the Commonwealth fails to produce sufficient evidence to establish any of these three necessary elements and a judge allows a juvenile's motion for a required finding of not guilty as to the youthful offender indictment, "the underlying offense will thereafter be treated as a delinquency complaint." *Id.* at 866 n.8. See Ireland, *supra* at § 2.7, at 432. Where a youthful offender indictment survives such a motion and "the jury find that the defendant is guilty of the underlying offense but that the requirements of G. L. c. 119, § 54, have not been satisfied, the defendant is adjudicated a delinquent child and shall be sentenced as such." *Commonwealth* v. *Quincy Q., supra* at 867. Consequently, where a youthful offender indictment follows a delinquency complaint regarding the same alleged crime, the delinquency complaint is treated as if it is subsumed within the youthful offender indictment, much as a lesser included offense is subsumed within the greater. They are not treated as separate proceedings that do not arise out of the same case.

The analysis applied by the court in reaching the conclusion that a youthful offender indictment is not a proceeding arising out of the same case as a delinquency complaint is tortuous and ultimately unpersuasive. The court argues that "a new indictment that substantially increases a defendant's sentencing exposure is qualitatively different from a continuation of an existing complaint in the form of a remand or retrial, and is thus not contemplated by the phrase 'any other proceeding.' " *Ante* at 639. But by that reasoning a superseding indictment that alleges the same crime with an enhanced sentencing provision is also a separate proceeding, even though it plainly is a proceeding arising out of the same case. The court also states that, because a nolle prosqui would routinely enter on a delinquency complaint after a youthful offender indictment is returned, they must be separate proceedings; but a nolle prosqui of an existing indictment would always enter after a superseding indictment is returned, and yet a superseding indictment plainly arises out of the same case as the superseded indictment. Indeed, because they arise out of the same case, double jeopardy protections bar the Commonwealth from simultaneously proceeding with a delinquency complaint once the trier of fact begins to hear evidence on an indictment based on the same offense. *Breed* v. *Jones*, 421 U.S. 519, 531 (1975).

When the Legislature in § 72 (*a*) declared that the Juvenile Court continues to retain jurisdiction of a case even after the juvenile attains the age of eighteen years, "including . . . for any other proceeding arising of their cases," it intended that phrase to be expansive to ensure that these cases continue to be adjudicated by the Juvenile Court, where the focus on the rehabilitation of the child remains front and center. *Commonwealth* v. *Connor C.*, 432 Mass. 635, 641-642 (2000) ("even as to the category of children adjudicated 'youthful offenders,' the statute does not label a 'youthful offender' proceeding as 'criminal' "). The court instead strains to interpret that phrase narrowly, in a manner no legislator reasonably could have intended, to obtain a practical result that no legislator reasonably could have wanted. Because there is a more reasonable statutory interpretation that would yield a practical result that comports with the legislative purposes of our juvenile justice system, I dissent in part.